IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DEMETRIUS C. COPE,

                    Plaintiff,

        v.

DAVE KOHLER, et al.,

                    Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 12-5188 (JBS-KMW)

**OPINION**

APPEARANCES:

DEMETRIUS C. COPE, Plaintiff Pro Se
29 Medallion Lane
Willingboro, New Jersey 08046

LUANH LLOYD D'MELLO, DEPUTY ATTORNEY GENERAL
OFFICE OF THE ATTORNEY GENERAL
STATE OF NEW JERSEY, DIVISION OF LAW
25 West Market Street
PO Box 112
Trenton, New Jersey 08625-0112
Attorney for Defendant Dave Kohler

**SIMANDLE, Chief Judge:**

## I.    INTRODUCTION

This matter comes before the Court on Defendant Dave
Kohler's ("Defendant") Motion to Dismiss Pursuant to Fed. R.
Civ. P. 12(b)(1) and 12(b)(6). (Docket Entry 35). Pro se
Plaintiff Demetrius C. Cope ("Plaintiff") filed an opposition to
Defendant's motion. (Docket Entry 41). This motion is being
considered on the papers pursuant to Fed. R. Civ. P. 78(b). For

the reasons set forth below, Defendant's motion shall be denied without prejudice.

## II.   BACKGROUND

### A. Procedural History

On August 17, 2012, Plaintiff filed this civil rights complaint pursuant to 42 U.S.C. § 1983 alleging Defendant and others engaged in malicious prosecution. (Docket Entry 1). By Order dated March 4, 2013, this Court granted Plaintiff's motion to proceed *in forma pauperis* and administratively terminated the complaint for failure to state a claim. (Docket Entries 3 & 4). Plaintiff filed an amended complaint on May 17, 2013. (Docket Entry 11). After engaging in *sua sponte* screening pursuant to 28 U.S.C. § 1915, the Court permitted the amended complaint to proceed against Defendant on the malicious prosecution claim only. (Docket Entry 14). With leave of Court, Defendant filed the instant Motion to Dismiss. (Docket Entry 35). Plaintiff filed opposition to the motion. (Docket Entry 41).

### B. Factual Background

*1.   Allegations in the Pleadings*

In March 2007, Defendant Dave Kohler and Officer John Fine, both detectives with the Burlington County Prosecutor's Office ("BCPO"),[1] met with a first-time confidential informant ("CI

---

[1] Officer Fine is also a defendant in the instant action, however he is not a part of the present motion to dismiss.

1551"). He[2] informed the officers that he had information regarding a "large scale cocaine distribution operated by [Plaintiff]." (Amended Compl. at 19).

CI 1551 indicated that Plaintiff had been selling cocaine for over ten years, and he had been buying cocaine from Plaintiff's house for six months. (Id. at 19). He alleged Plaintiff obtained "kilogram quantities" of powder cocaine from a source in New York City and then re-packaged the cocaine for distribution throughout Burlington County by Mark McNeil. (Id. at 19-20). He also stated Plaintiff used pre-paid wireless telephones to communicate with others, which he changed frequently to avoid detection by police. (Id. at 19). CI 1551 indicated the frequent changing of Plaintiff's number was why he did not have a current contact number for Plaintiff. (Id. at 6).

Following their conversation with CI 1551, Defendant and Officer Fine, with cooperation from the Drug Enforcement Administration ("DEA"), began an investigation, dubbed "Operation Whirlwind," into the distribution scheme. (Id. at 6). The BCPO obtained wiretaps for McNeil's phone, however "there was no probable cause to obtain any [wiretaps] for [Plaintiff]." (Id. at 7). Accepting Plaintiff's allegations as true, the wiretaps did not contain any narcotic-related conversations, but

---

[2] CI 1551's gender is unknown. For ease of reference the Court will refer to CI 1551 using male pronouns.

Defendant deliberately interpreted the conversations as referring to the distribution of cocaine. (Id. at 7). Furthermore, the recorded conversations indicated someone named "Ali" from Newark, New Jersey was McNeil's source of cocaine, not Plaintiff. (Id. at 7).

As Operation Whirlwind proceeded, information came to light that contradicted CI 1551's account of the conspiracy. A second confidential informant ("CI 2"), who had previously given reliable information to law enforcement, informed the BCPO that McNeil operated the distribution ring, not Plaintiff. (Id. at 7). CI 2 made no mention of Plaintiff's involvement with McNeil or the distribution of cocaine. (Id. at 7). Furthermore, a conversation between McNeil and Plaintiff that was intercepted on approximately August 16, 2007 purportedly indicated that Plaintiff traveled to Texas for cocaine, not New York as CI 1551 claimed. (Id. at 8).

In spite of being in possession of information contradicting CI 1551's version of events, Defendant continued to assert in various affidavits in support of warrant applications that Plaintiff was the distributor. (Id. at 7). Prior to applying for a search warrant for Plaintiff's home, officers conducted surveillance of Plaintiff upon his return from Texas. (Id. at 10). In their warrant affidavit, the

4

officers allegedly intentionally distorted what occurred during surveillance.

On August 24, 2007, Plaintiff was arrested, and his residence was searched by members of the BCPO, including Defendant. (Id. at 8-9). Although several items were seized during the search, no cocaine or other evidence linking Plaintiff to cocaine trafficking was found. (Id. at 8-9). Again accepting Plaintiff's version of events, Defendant and other law enforcement agents threatened and coerced McNeil into making a statement that implicated Plaintiff in the cocaine distribution. (Id. at 8). McNeil informed the officers that his August 16, 2007 conversation with Plaintiff was not about trafficking in narcotics, but Defendant Kohler presented a distorted version of McNeil's statement during his testimony before a Burlington County grand jury. (Id. at 8). Plaintiff was indicted on September 18, 2008 for conspiracy to distribute/possess with intent to distribute a controlled dangerous substance, N.J. STAT. ANN. §§ 2C:5-2, 35-5(a)(1), 35-5(b)(2). (Id. at 32).

In July 2010, Plaintiff contacted the Department of Justice's Office of Professional Responsibility ("OPR") and asserted that he had been harassed, threatened, and coerced by law enforcement and that the case against him had been manufactured. (Id. at 10, 41). Shortly thereafter, Plaintiff's wife received a letter from their home insurance company. The

letter stated the insurance company had been informed that Plaintiff had previously been convicted of distributing drugs on school property, and as a result they would not renew the home or automobile policies that were in Plaintiff's wife's name. (Id. at 10, 39). Plaintiff states that Defendant informed the insurance company of the charges out of malice and in retaliation for contacting the OPR. (Id. at 10).

In approximately October 2011, McNeil recanted his statement to police implicating Plaintiff in the conspiracy. (Id. at 32). He also provided Plaintiff with exculpatory statements. (Id. at 32). The Burlington County Prosecutor filed for a *nolle proseui* order as "the State's proofs have been significantly compromised." (Id. at 32). The New Jersey Superior Court Law Division formally dismissed the indictment on October 14, 2011. (Id. at 32).

Plaintiff asserts Defendant engaged in malicious prosecution by distorting the facts of the case in his affidavits in support of wire-tap and search warrants and in his testimony before the grand jury, and by coercing McNeil to implicate Plaintiff in the conspiracy regardless of the evidence, resulting in an indictment for which Plaintiff was eventually exonerated.

2.   *Defendant's Statement of Facts*

Defendant asserts that as a member of the BCPO, he is entitled to sovereign immunity. He also argues that he is entitled to qualified immunity as his sworn statements in support of warrant applications were based on probable cause derived from his lengthy investigation. He finally argues that his grand jury testimony is entitled to absolute immunity.

**III. STANDARD OF REVIEW**

**A. Dismissal Under Rule 12(b)(1)**

Defendant argues that Plaintiff's § 1983 claims are barred by the doctrine of Eleventh Amendment sovereign immunity. Eleventh Amendment immunity is a challenge to this Court's subject matter jurisdiction and, therefore, is determined pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). As Defendant's assertion that Plaintiff's claims are barred by sovereign immunity is a facial attack on jurisdiction as opposed to a factual attack, *see id.* at 357-59, the Court accepts the allegations in the complaint as true and utilizes the standard for dismissal under Rule 12(b)(6). *Id.* at 358.

**B. Dismissal Under Rule 12(b)(6)**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a court must accept all well-pleaded allegations

7

in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). A plaintiff should plead sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," *Twombly*, 550 U.S. at 556, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). However

"pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## IV.  DISCUSSION

## A. Eleventh Amendment Immunity

Defendant asserts that as a member of the BCPO, he is entitled to sovereign immunity. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

"Sovereign immunity extends to state agencies and state officers, 'as long as the state is the real party in interest.' It does not extend to counties and municipalities." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 857 (3d Cir. 2014) (quoting *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989)). To determine whether the state is the real party in interest, this Court considers three factors: (1) whether the money to pay for the judgment would come from the state; (2) the status of the agency under state law; and (3) what degree of autonomy the agency has. *Fitchik,* 873 F.2d at 659; *see also Estate of Lagano*, 769 F.3d at 857-58 (holding *Fitchik* is the "proper framework for analyzing Eleventh Amendment sovereign

immunity as it applies to county prosecutors . . . "). Utilizing the *Fitchik* factors and acknowledging prior case law holding that "'[w]hen [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State," the Third Circuit has applied Eleventh Amendment immunity to county prosecutor offices when their actions "are clearly law enforcement functions." *Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013) (citing *Fitchik*, 873 F.2d at 659; *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008); and *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996)).

In this case, Plaintiff's complaints about the Defendant concern the investigation and prosecution of his criminal case, the ultimate law enforcement function of the Prosecutor's Office. However, the allegations that Defendant contacted Plaintiff's wife's insurance company in retaliation supports a reasonable inference that Defendant did not act exclusively within his classic investigatory and prosecutorial functions. *See Estate of Lagano*, 769 F.3d at 857-58. Moreover, Defendant failed to address the *Fitchik* factors in his motion papers. As the Court cannot make the required findings, the motion must be denied.

Even if Defendant is immune in his official capacity, the Court must still determine whether it may proceed against Defendant in his individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 31

(1991) ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."); *Slinger v. New Jersey*, 366 F. App'x 357, 360-61 (3d Cir. 2010).

## B. Immunity for Grand Jury Testimony

Defendant also argues he is entitled to absolute immunity for his testimony before the grand jury. He is correct.

The Supreme Court has unanimously held that grand jury witnesses, like trial witnesses, have "absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012); *see also Peteete v. Asbury Park Police Dep't*, 477 F. App'x 887, 889-90 (3d Cir. 2012). The Court noted that "[d]espite the broad terms of § 1983, this Court has long recognized that the statute was not meant to effect a radical departure from ordinary tort law and the common-law immunities applicable in tort suits." *Rehberg*, 132 S. Ct. at 1502. "Immunities 'well grounded in history and reason,' . . . were not somehow eliminated 'by covert inclusion in the general language' of § 1983." *Ibid.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Defendant is therefore entitled to absolute immunity for his testimony before the grand jury, therefore it may not be used against him at trial. As Plaintiff alleges more misconduct than

11

just the grand jury testimony, however, the complaint cannot be dismissed on this basis.

## C. Qualified Immunity

Defendant finally asserts he is entitled to qualified immunity. Qualified immunity is an affirmative defense, not a jurisdictional attack, available to government officials that shields them from litigation arising from actions taken in the course of their duties in certain cases. *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004). In order for a defendant to be immune from liability, the Court must find that the defendant's conduct has not violated any clearly established statutory or constitutional right. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). If, however, the Court finds that a reasonable official would have known that the alleged conduct was in violation of a clearly established federal right, then immunity is forfeited.

In support of his qualified immunity argument, Defendant has submitted several exhibits consisting of his affidavits in support of electronic communication interception, search warrants, and arrest warrants for Operation Whirlwind. As a general rule, a party's reliance upon factual materials extraneous to the pleadings requires the Court to treat a motion to dismiss as one for summary judgment under Rule 56. *See Crown Cent. Petroleum Corp. v. Waldman*, 634 F.2d 127, 129 (3d Cir. 1980). The Court may, however, consider a "document integral to

12

or explicitly relied upon in the complaint," or an "undisputedly authentic document" without converting the motion. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Although Plaintiff does mention Defendant's affidavits throughout his complaint, he asserts they are not accurate representations of the events described therein and were deliberately fabricated to secure the desired results, namely Plaintiff's arrest and subsequent indictment. As such, the papers submitted by Defendant are not undisputedly authentic documents that may be considered by the Court without converting the motion to dismiss into a summary judgment motion. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d at 287. The Court therefore declines to consider the papers submitted by Defendant in connection with the motion to dismiss.

Although a finding of qualified immunity should be made at the earliest possible point, the Court finds that in this case, such a determination cannot fairly be made at this point in time. Plaintiff has not had the opportunity to conduct discovery, (*see* Docket Entry 43, Order Staying Discovery), and said discovery may yield evidence relevant to the qualified

immunity determination. For example, a deposition of McNeil may shed light on the reasons he recanted his statement incriminating Plaintiff, which would inform the Court as to whether Defendant's actions clearly violated Plaintiff's constitutional rights. The Court therefore declines to adjudicate Defendant's qualified immunity argument at this point of time, without prejudice to his ability to raise the defense at a future point in time.

**V. CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is denied in part and granted in part. An accompanying Order will be entered.

| | |
|---|---|
| **June 29, 2015** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

14