IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMETRIUS C. COPE,<br><br>               Plaintiff,<br><br>    v.<br><br>DAVE KOHLER, JOHN FINE, and<br>JOE CARUSO,<br><br>               Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 12-5188 (JBS/KMW)<br><br><br>**OPINION** |

APPEARANCES:

Mark A. Fury, Esq.
22 Washington Street
PO Box 368
Mt. Holly, NJ 08060
    Attorney for Plaintiff

Thomas P. Lihan, Deputy Attorney General
New Jersey Office of the Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 116
Trenton, NJ 08625-0112
    Attorney for Defendant Kohler

Mary Lou Garty, Esq.
THE GARTY LAW FIRM, LLC
712 East Main Street
Suite 2A
Moorestown, NJ 08057
    Attorney for Defendant Fine

Swati M. Kothari, Esq.
212 Route 38
Suite 200
Moorestown, NJ 08057
    Attorney for Defendant Caruso

**SIMANDLE, District Judge:**

## I. INTRODUCTION

This matter comes before the Court on the motions of Defendants Detective Dave Kohler (hereinafter, "Defendant Kohler" or "Detective Kohler"), Officer John Fine (hereinafter, "Defendant Fine"), and Officer Joseph Caruso (hereinafter, "Defendant Caruso") for summary judgment pursuant to Fed. R. Civ. P. 56(a) in a § 1983 malicious prosecution action brought by Plaintiff Rashid Adowa, formerly known as Demetrius Cope (hereinafter, "Plaintiff"). [Docket Items 86, 91, 93.] For the reasons stated herein, the Court grants Defendants' motions.

## II. BACKGROUND

### A. Factual Background

Plaintiff Rashid Adowa is a resident of Burlington County, New Jersey, and has lived predominantly in Burlington City where Defendants Fine and Caruso are police officers. (Pl.'s SMF at ¶ 1.) Defendant David Kohler is a Detective at the Burlington County Prosecutor's Office, and has worked for the Office's Narcotics Task Force since June 2001. (Def. Kohler SMF at ¶ 3.)

Plaintiff acknowledges his prior history of arrests and run-ins with the law, including charges of assault and possession of controlled drug substances and firearms, all filed against him by the Burlington City Police Department and prosecuted by the Burlington County Prosecutor's Office. (Pl.

2

SMF at ¶ 2.)  Specifically, in October 2006, Plaintiff was arrested and indicted on a second-degree weapons charge which stemmed from a police officer's discovery and seizure of a SX Model SKS 762 caliber rifle at Plaintiff's home on July 5, 2006. (Def. Caruso SMF at ¶ 28.)[1]

In March 2007, a confidential informant ("CI 1551") provided Detective Kohler and Defendant John Fine of the Burlington City Police Department with information related to a "large-scale cocaine distribution organization operated by [Plaintiff]." (Id. at ¶ 11; Def. Fine SMF at ¶ 3.)  CI 1551 indicated that he/she had known Plaintiff to have sold cocaine for a period of ten years. (Def. Fine SMF at ¶ 4.) CI 1551 indicated that (1) two individuals, Plaintiff and Mark McNeil, were distributing cocaine from their residences, (2) Plaintiff had been selling cocaine for a period of over ten years, utilizing an unidentified supply source based in New York City, and (3) that the CI had been purchasing cocaine from Plaintiff at his Burlington Township residence for six months prior, and that Plaintiff had additional residences in Willingboro and possibly Pennsauken. (Def. Kohler SMF at ¶¶ 12-14.)

---

[1] On May 10, 2011, Plaintiff was convicted by a jury on these charges and sentenced to a term of 12 years in state prison. (Ex. H to Fine Br.)

Detective Kohler, upon interviewing CI 1551, determined that the CI was "knowledgeable in the jargon used and practices involving the use and distribution of Controlled Dangerous Substances." (Id. at ¶¶ 15, 19.) Specifically, CI 1551 indicated that when he/she would contact Plaintiff, he/she would use code words such as "tickets" or "tee-shirts' in reference to crack cocaine, and that Plaintiff would change his wireless telephone every few months and purchase pre-paid wireless telephones under fictitious names, both in an effort to thwart law enforcement investigators. (Id. at ¶¶ 16-17.) CI 1551 also informed Detective Kohler that Plaintiff had directed him/her to deal with Mark McNeil at a specific telephone number, and that McNeil was being supplied by Plaintiff personally. (Id. at ¶ 18.) Detective Kohler confirmed CI 1551's familiarity with Plaintiff and McNeil based on his/her identification of certain physical identifiers of McNeil, the identification of unmarked photographs of Plaintiff and McNeil, and the recitation of both Plaintiff and McNeil's criminal history. (Id. at ¶ 20.)

In March 2007, based on the corroborated information received from CI 1551, Detective Kohler commenced Operation Whirlwind. (Id. at ¶ 21.)[2] CI 1551 made undercover purchases of crack cocaine from McNeil on March 25, 2007 and March 28, 2007.

---

[2] The identity of the confidential informant has not been disclosed.

(Id. at ¶ 26.) Then, on April 18, 2007, Detective Kohler made an application for the first of five communications data warrants to a judge of the Superior Court of New Jersey; after reviewing Detective Kohler's supporting Application and Affidavit, the court found probable cause of a narcotics conspiracy, and issued the warrant. (Id. at ¶¶ 27-28.)[3] This warrant and the subsequent renewals resulted in the interception and recording of numerous telephone conversations between Plaintiff and McNeil from July 2007 to August 2007. (Id. at ¶ 30.)

On August 11, 2007, at approximately 11:45 A.M., an outgoing telephone call from McNeil to an unidentified male was intercepted and recorded. (Id. at ¶ 32.) Detective Kohler believed that McNeil was identifying Plaintiff as a source of narcotics for McNeil's distribution network, indicating that Cope was running low on his supply and should be obtaining an additional supply in the near future, and expressing hop that Cope would get an additional supply of cocaine prior to McNeil and his girlfriend having their baby. (Id. at ¶ 33.) Then, on August 13, 2007, at approximately 2:20 P.M., an outgoing telephone call from McNeil to Plaintiff was intercepted and

---

[3] The Court made similar findings of probable cause as to all subsequent renewal applications submitted by Detective Kohler to the Superior Court judge. (Id. at ¶ 29.)

recorded. (Id. at ¶ 35.)  Plaintiff asked McNeil if he "gotta
hundred," which Kohler interpreted as Plaintiff referring to a
previous narcotics transaction with McNeil, and that he wanted
100 grams of cocaine. (Id. at ¶ 36.)  On a later intercepted
call that day, at 7:22 P.M., Plaintiff stated "bring I, bring
that with you," which Detective Kohler interpreted to mean that
Plaintiff was telling McNeil that he was prepared to conduct the
narcotics transaction negotiated during their earlier telephone
call, and that the parties agreed that it would be conducted at
the hospital. (Id. at ¶¶ 39-40.)

        Then, on August 16, 2007, at approximately 8:18 P.M., an
outgoing call from McNeil to Plaintiff was intercepted, where
McNeil confirmed that he would be taking Plaintiff somewhere,
which Detective Kohler believed to be the airport. (Id. at ¶
41.)  A check with the DEA's Airport Group confirmed that on
August 17, 2007, Plaintiff and two others flew from LaGuardia
International Airport to Dallas-Fort Worth International
Airport, with a final destination of El Paso International
Airport. (Id. at ¶ 43.)  An intercepted call on August 17 at
12:17 P.M. from Plaintiff to an unknown individual indicated to
Detective Kohler that there would be a delivery of cocaine to
Plaintiff from an unknown supplier in Juarez, Mexico. (Id. at ¶
47-48.)  On August 19, 2007, McNeil called Plaintiff, and
according to Detective Kohler's interpretation, McNeil was

questioning Plaintiff as to whether he has obtained the cocaine, and Plaintiff was indicating that he had and was returning to New Jersey. (Id. at ¶¶ 55-56.)

During Plaintiff's journey from Texas to New Jersey, investigators put a GPS "ping" on Plaintiff's cell phone, and observed an associate, Demetrius Lawful, removing two black duffle bags from the back seat of his car and placing them into the bed of Plaintiff's red Chevrolet pickup truck. (Id. at ¶¶ 56, 62.) Lawful exited with one duffel bag at a residence in Willingboro, NJ, and Plaintiff went to a location in Pennsauken, NJ carrying the other duffel bag. (Id. at ¶¶ 63-64.)

On August 24, 2007, a warrant authorizing the search of both Plaintiff and his residence in Pennsauken was reviewed and issued by a judge of the Superior Court of New Jersey. (Id. at ¶ 67.) During the search, illegal weapons were seized, and as a result, Plaintiff was charged with the federal crime of illegal possession of weapons by a person not permitted to own a weapon. (Def. Fine SMF at ¶¶ 15, 31.) Plaintiff plead guilty to this charge on May 11, 2010, and was sentenced to a term of seventy months in federal prison. (Id. at ¶¶ 16, 34.)

On September 18, 2008, a Burlington County Grand Jury returned an indictment charging Plaintiff, amongst eight other co-defendants, with second-degree conspiracy to distribute/possess with intent to distribute cocaine, in

contravention of N.J.S.A. 2C:35-a(1) and 2C:35-5b(2). (Id. at ¶ 78.) Detective Kohler conducted additional proffer sessions with McNeil in the presence of his attorney on March 17, 2008 and May 2, 2008. (Id. at ¶¶ 79, 83.) On October 14, 2011, while Plaintiff was still incarcerated for the federal weapons, the Burlington County Prosecutor moved to dismiss the state indictment as to Plaintiff nolle prosequi. (Id. at ¶ 93; Def. Fine SMF at ¶ 36.)

### B. Procedural History

On August 17, 2012, Plaintiff filed a civil rights complaint pro se pursuant to 42 U.S.C. § 1983 alleging claims of false arrest, illegal search and seizure, and a host of other violations. [Docket Item 1.] By Order dated March 4, 2013, this Court granted Plaintiff's motion to proceed in forma pauperis and administratively terminated the complaint without prejudice for failure to state a claim. [Docket Items 3 and 4.] Plaintiff filed an Amended Complaint on May 17, 2013. [Docket Item 11.][4] In the Amended Complaint, Plaintiff alleged that Defendant Kohler "knowingly used false statements, intimidated/coerced witnesses, harassment, manufactured evidence, malicious prosecution, and unreasonable seizure" and "distorted the real facts to create

---

[4] For a more robust summary of the allegations in Plaintiff's Amended Complaint, the Court directs readers to Cope v. Kohler, No. 12-5188, 2015 WL 3952714, at *1-3 (D.N.J. June 29, 2015).

probable cause." (Am. Compl. at 3.) Plaintiff alleged that Defendant Fine "initiated the investigation by knowingly using false statements;" specifically, that Fine "developed" and "fine tuned" the accusations of the "first time [confidential] informant" by "fill[ing] in the blanks with knowingly false accusation's (sic), then built a case around it." (Id.) Plaintiff also alleges that Defendant Fine coached witness Mark McNeil and "intentionally distorted surveillance observations to give plaintiffs (sic) conduct a cds appearance/relationship." (Id.) Regarding Defendant Caruso, Plaintiff alleged that he "was another officer who interviewed Mark McNeil and attempted to coerce him into implicating plaintiff." (Id.)

On January 16, 2014, after engaging in sua sponte screening pursuant to 28 U.S.C. § 1915, the Court permitted the Amended Complaint to proceed against Defendants on the malicious prosecution claim only. [Docket Item 14.] Defendants Fine and Caruso filed Answers to the Amended Complaint, but Defendant Kohler moved to dismiss the Amended Complaint asserting entitlement to absolute immunity for his testimony before a grand jury and qualified immunity for his actions relating to his investigation of Plaintiff. [Docket Item 35.] The Court granted Defendant Kohler's motion with respect to the absolute immunity issue, but denied his motion without prejudice with respect to the assertion of qualified immunity, based upon the

Court's finding that Plaintiff should be afforded opportunity to conduct discovery of underlying facts relevant to Defendant Kohler's assertion of qualified immunity. Cope v. Kohler, No. 12-5188, 2015 WL 3952714, at *6 (D.N.J. June 29, 2015).

The Magistrate Judge appointed counsel for Plaintiff on November 16, 2015. [Docket Item 60.] After the parties exchanged written discovery and conducted the depositions of Plaintiff and McNeil, the Defendants served Plaintiff with Requests for Admissions seeking the factual basis for the allegations in the Amended Complaint. Plaintiff did not respond to any of the statements set forth in the Requests for Admissions. Defendant Fine filed his motion for summary judgment on December 9, 2016 [Docket Item 86], Defendant Kohler filed his motion for summary judgment on December 9, 2016 [Docket Item 91], and Defendant Caruso filed his motion for summary judgment on December 21, 2016 [Docket Item 93.] In response, Plaintiff filed a "Statement of Material Facts" along with a nine-paragraph submission titled "Plaintiff's Certification in Opposition to Summary Judgment." [Docket Items 100-101.]⁵

---

⁵ Defendant Fine argues that Plaintiff's opposition materials do not comply with L. Civ. R. 56.1. Counsel for Plaintiff requested an extension of time to respond to Defendants' summary judgment motions on several occasions, including on January 3, 2017 [Docket Item 96], February 2, 2017 [Docket Item 98], and February 16, 2017 [Docket Item 100]. The Court permitted each of these extensions. On March 15, 2017, Plaintiff filed a four-page, nine-paragraph "Statement of Material Facts," where he

**III. STANDARD OF REVIEW**

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

---

does not respond to Defendants' allegations nor does he cite to the record for any of his allegations, as required by, as required by L. Civ. R. 56.1(a)("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion.")(emphasis added). While Plaintiff was initially pro se, he has been represented by counsel since November 16, 2015. Accordingly, the Court deems the facts as set forth in Defendants' various 56.1 statements undisputed for purposes of the instant summary judgment motions. L. Civ. R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. <u>Boyle v. Cnty. of Allegheny Pennsylvania</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Anderson</u>, 477 U.S. at 252).

## IV. DISCUSSION

### A. Requests for Admissions

Defendant Kohler served Plaintiff with Requests for Admission on June 29, 2016, and counsel for Plaintiff received them on June 30, 2016, but never responded to any of the requests. (Exs. B-C to Def. Kohler Br.) Defendant Fine served Plaintiff's counsel (via e-mail and first-class mail) with Requests for Admissions on August 11, 2016, but no response or objection from Plaintiff has been received. (Exs. C-D to Def. Fine Br.)

Requests for Admissions were properly served and were required to be answered by stating either "admitted" or "denied" as required by Rule 36. <u>See</u> <u>United Coal Companies v. Powell Construction Co.</u>, 839 F.2d 958, 967-68 (3d Cir. 1988) (noting

12

that Rule 36 requests should be simple and concise and capable of being admitted or denied without explanation).

Plaintiff did not timely respond to the requests and Defendants therefore argue that they should now be deemed admitted under the provisions of Rule 36(a), which states in relevant part:

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

Fed. R. Civ. P. 36(a)(3). "The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested." United Coal Companies, 839 F.2d at 967. Therefore, "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ.P. 36(b). An admission under Rule 36 is an "unassailable statement of fact." Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3d Cir. 1992) (quoting Airco Industrial Gases, Inc. v. Teamsters Health & Welfare Pension Fund, 850 F.2d 1028, 1037 (3d Cir. 1988)).

It is well established that admissions under Rule 36 are conclusive and sufficient to support summary judgment. *See* Langer, 966 F.2d at 803; Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 176 n.7 (3d Cir. 1990) (citing

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976),
*cert. denied,* 429 U.S. 1038 (1977)).

The Court therefore deems the facts in Defendants' Requests
for Admissions as true for purposes of summary judgment. See
Fed. R. Civ. P. 36; *J & J Sports Productions, Inc. v.*
*Gencarelli*, No. 10-4375, 2012 WL 266419, at *2 (D.N.J. Jan. 30,
2012)(granting summary judgment to plaintiff on admitted facts
based on defendant's failure to respond to requests for
admission).

**B. Malicious Prosecution**

Defendants contend that they are entitled to summary
judgment on Plaintiff's malicious prosecution claim.  To prevail
on a Section 1983 claim of malicious prosecution, Plaintiff must
show that: (1) Defendants initiated a criminal proceeding; (2)
the criminal proceeding ended in plaintiff's favor; (3) the
proceeding was initiated without probable cause; (4) the
defendants acted maliciously or for a purpose other than
bringing the plaintiff to justice; and (5) the plaintiff
suffered deprivation of liberty consistent with the concept of
seizure as a consequence of a legal proceeding. *Estate of Smith*
*v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2009); *Johnson v. Knorr*,
477 F.3d 75, 82 (3d Cir. 2007).  Failure to prove any element is
a basis to deny a malicious prosecution claim. *Amato v. Smith*,
No. 06-3161, 2010 WL 3906958, at *8 (D.N.J. Sept. 28,

2010)(citations omitted).  When claims of malicious prosecution are brought against an arresting officer, it must also be shown that the chain of causation was not broken by the "intervening exercise of independent judgment" by a judge or prosecutor. Rankines v. Meyrick, No. 14-1842, 2016 WL 545134, at *7 (D.N.J. Feb. 10, 2016)(citations omitted).

Defendants Kohler, Fine, and Caruso do not contest that the criminal proceeding ended in Plaintiff's favor; however, they argue that Plaintiff cannot satisfy the other elements required to bring a successful § 1983 claim based on malicious prosecution. The Court agrees with Defendants and, for the followings reasons, grants summary judgment in favor of the Defendants on Plaintiff's remaining malicious prosecution claim.

### 1.  Initiated Proceedings

Defendants Fine and Caruso argue that Plaintiff cannot satisfy the first element of a malicious prosecution claim because Plaintiff fails to show that either one of them initiated the proceedings against him.[6]  Defendants argue that the narcotics investigation of Plaintiff and others was led by the Burlington County Prosecutor's Office, and that Defendant Fine did not author any warrant, affidavit, or report. (Def. Fine Br. at 21.) Defendants are correct that a malicious

---

[6] Defendant Kohler does not contest this prong of the malicious prosecution analysis.

prosecution action against a police officer is out of the ordinary because a prosecutor, not police officer, initiates criminal proceedings against an individual. Shamberger v. Glover, No. 10-3236, 2012 WL 12517917, at *8 (D.N.J. May 23, 2012). "Although a prosecutor may initiate criminal proceedings based on information received from a police officer, the prosecutor does so only after independently reviewing the information and exercising his or her discretion to initiate such proceedings." Shamberger, 2012 WL 12517917, at *8 (citation omitted).  However, a plaintiff may maintain a malicious prosecution action against a police officer who made "knowing misstatements" to the prosecutor, or "interfered with the prosecutor's informed discretion in deciding whether to initiate proceedings." Id.

Plaintiff alleges that Defendant Caruso and Defendant Fine coerced Mark McNeil into implicating him in a drug conspiracy. If this were true, and Defendant Kohler prosecuted Plaintiff under false pretenses of a coerced informant, then Plaintiff could satisfy the first element of a malicious prosecution claim, that Defendants Caruso and Fine initiated proceedings against him.  However, Plaintiff has not pointed the Court to any evidence in the record that Defendant Fine or Defendant Caruso did in fact intimidate or coerce McNeil into implicating his involvement. To the contrary, McNeil stated in his

deposition that he never informed Plaintiff that someone coerced him into implicating Plaintiff in the distribution of a controlled dangerous substance. (Ex. B to Def. Fine Br. at 16.] While the fact that the police officers did not directly initiate the prosecution cannot alone preclude Plaintiff's claim from going forward, there is no genuine issue of material fact as to whether Defendants knowingly relayed false information to the prosecutor.

### 2. Probable Cause

Defendants next argue that Plaintiff has put forth no evidence that his arrest was initiated without probable cause. "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person being arrested." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003)(quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995)). Probable cause may be absent where an officer "knowingly and deliberately, or with a reckless disregard for the truth made false statements or omissions that create a falsehood" and "such statements or omissions are material, or necessary to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-787 (3d Cir. 2000). Furthermore, officers may not rely on facts of which they had a

"high degree of awareness of their probable falsity." Id. While usually "the question of probable cause in a section 1983 damage suit is one for the jury," Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998), "a district court can determine that probable cause exists as a matter of law and grant summary judgment when the evidence cannot reasonably support a contrary finding." Woodyard v. City of Essex, 514 F. App'x 177, 183 (3d Cir. 2013). "Lack of probable cause is the sine qua non of malicious prosecution." Trabal v. Wells Fargo Armored Service Corp., 269 F.3d 243, 249 (3d Cir. 2001).

Plaintiff alleges that Defendant Kohler and Defendant Fine knew the allegations of the CI were not reliable by virtue of him/her being a first-time CI, and that Defendants did nothing to "corroborate accusations and in fact, ignored the veracity and reliability of the CI". (Am. Compl. at 1.) Specifically, Plaintiff states that (1) "Defendants converted innocent conversations about Mr. McNeil dropping me to the airport for a Texas trip that I planned to take into a purported description of a drug transaction in that state, (2) Defendants then represented to a state court judge that conversations overhead on the wiretap were coded to conceal CDS related transactions, and (3) Defendant Kohler expressly misrepresented the conversations to the state court judge in order to create the impression of Plaintiff's involvement in a drug transaction, all

as a means to obtain a search warrant." (Pl. Certification at ¶ 6.) Furthermore, Plaintiff states that "police under Defendants' direction seized my truck, stripped it in search of drugs, and finding none, intimidated known drug dealer and prosecutorial target Mark McNeil (heard on some of the wiretaps) into making a statement implicating me in his drug selling affairs as evidence to accomplish an arrest." (Id. at ¶ 7.) All of this, Plaintiff argues, is evidence that Defendants had no probable cause for making the arrest, but rather manufactured accusations and then distorted the real facts to create probable cause.

Defendants respond that Plaintiff has failed to come forward with competent, admissible evidence to raise a genuine issue of material fact that Defendants Kohler, Fine, or Caruso, knew or should have known that any specific aspect of the information revealed during the investigation was inaccurate. Detective Kohler states that based on his training and expertise, the discussions between Plaintiff and McNeil captured by the wiretap were discussions concerning narcotics transactions. Defendants further argue that the results of the investigation prompted the Superior Court Judge to find that there was a reasonable basis for the issuance of search warrants for Plaintiff's house. (Def. Kohler investigative reports of August 21-24, 2007.)

In <u>Woodyard v. Cty. Of Essex</u>, 514 F. App'x 177 (3d Cir. 2013), the plaintiff was indicted for first-degree murder and fourth degree unlawful possession of a weapon. The prosecution later filed a Recommendation of Dismissal noting that although there was probable cause for plaintiff's arrest, they would not be able to meet their standard of proof. <u>Id.</u> at 180. Plaintiff subsequently filed a malicious prosecution complaint under 42 U.S.C. § 1983 alleging that the individual police officers did not have probable cause to make the arrest. <u>Id.</u> The plaintiff claimed that a detective manipulated and suppressed evidence relating to plaintiff's relationship with the victim and drug habits, and failed to expose the other defendant's unlawful acts by not revealing the inconsistencies in the eyewitness's testimony. <u>Id.</u> at 181. The court held that there was no evidence that the lead detective coerced the eyewitness's statements, or that he knew her statement about her physical proximity to the murder was false. <u>Id.</u> Further, the court held that plaintiff's grand jury indictment created a presumption of probable cause. <u>Id.</u> at 183. A "grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute;" the presumption will only be overcome "by evidence that the presentment was procured by fraud, perjury or other corrupt means." <u>Woodyard</u>, 514 F. App'x at 183 (quoting <u>Rose v. Bartle</u>, 871 F.2d 331, 353 (3d Cir. 1989)). See <u>Trabal v.</u>

<u>Wells Fargo Armored Service Corp.</u>, 269 F.3d 243, 251 (3d Cir. 2001) (explaining that an "indictment establishes probable cause by definition, and it does not evaporate simply because the prosecutor later decided that subsequent events compromised Rodriguez's value as a witness"); <u>King v. Deputy Atty. Gen. Del.</u>, 616 F. App'x 491, 495 (3d Cir. 2015) ("A grand jury indictment is prima facie evidence of probable cause to prosecute.").

Here, Plaintiff was indicted by a grand jury, creating a presumption of probable cause; however, he claims that this indictment was the result of Defendant Kohler fraudulently testifying that McNeil implicated Plaintiff's involvement in drug distribution, when in fact McNeil attempted to disabuse the Defendants of their impression that Plaintiff was involved. Aside from the conclusory allegation that Defendant Kohler falsely testified, Plaintiff has not pointed to any facts within the evidentiary record, to create a genuine issue of material fact that McNeil did not implicate Plaintiff in a drug conspiracy, and yet Defendant Kohler, nonetheless, testified to the opposite. Plaintiff has not produced any evidence (besides his own conclusory certification) to support the allegation that Defendant Fine or Defendant Kohler knew the information they received from the CI was false or unreliable, aside from the fact that he/she was a first time informant. Furthermore,

Kohler only obtained a wiretap on McNeil's phone, not Plaintiff's phone, and came to the conclusion that the multiple conversations he heard concerned illegal drug sales. In Plaintiff's Amended Complaint, he even admits that "[i]t's true that there was drug distribution, but to call it a 'large scale drug ring', is exaggerated." (Am. Compl. at 15.) Accordingly, Plaintiff has failed to raise any material fact issues to demonstrate a lack of probable cause; thus, summary judgment is appropriate.

### 3. Malice

Defendants contend that there is no evidence of malice. Malice is defined as "the intentional doing of a wrongful act without just cause or excuse." Prince v. Aiellos, 594 F. App'x 742, 746 (3d Cir. 2014)(quoting LoBiondo v. Schwartz, 199 N.J. 62, 93-94, 970 A.2d 1007 (2009)). Malice can be inferred from "want of probable cause," provided the plaintiff "produce[s] at least some extrinsic evidence" of the malice. Id. (quoting Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 395-96, 972 A.2d 1112 (2009)). In the context of malicious prosecution, "malice can mean ill-will *or* the use of a prosecution for an extraneous purpose *or* a lack of belief in the guilt of the accused." Lippay v. Christos, 996 F.2d 1490, 1503 (3d Cir. 1993) (emphasis in original).

Plaintiff alleges that Defendants Kohler, Fine, and Caruso misled and distorted events, coerced and threatened Mark McNeil, and that Kohler "intentionally and maliciously lied before a grand jury." (Am. Compl. at 3.) Defendants argue that these are broad conclusory allegations and are not supported by facts or an explanation as to how any of the defendants lied or distorted events.  The Court agrees with Defendants. Plaintiff has failed to present any extrinsic evidence to show that any Defendant acted with malice or for any other reason than to bring Plaintiff to justice.  Plaintiff states that "[f]or reasons that Plaintiff can only conclude were malicious, Defendants opened an investigation of Plaintiff allegedly related to the possession and sale of controlled dangerous substances." (Pl. Certification at ¶ 6.)  But such conclusory allegations, without any citations to the record or other support, cannot suffice at the summary judgment stage. See Celotex Corp., 477 U.S. 317, 324 (1986) (explaining that the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" (quoting Fed. R. Civ. P. 56(e)); see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . .  with conclusory allegations of an affidavit.")

Because there is no evidence from which a reasonable fact finder could find malice, Defendants are entitled to summary judgment due to failure of this essential element of malicious prosecution.

### 4. Deprivation of Liberty

Finally, Defendants Kohler, Fine, and Caruso argue that Plaintiff did not suffer any deprivation of liberty as a result of his prosecution.  In order to successfully bring a claim for malicious prosecution, a plaintiff must not only show prosecution without lack of probable cause, but also must show "some deprivation of liberty consistent with the concept of seizure." Donahue v. Gavin, 280 F.3d 371, 380 (3d Cir. 2002)(quoting Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998)).  Fourth Amendment seizures for purposes of a § 1983 claim "relate to the boundary between arrest and pretrial detention.At most, there may be some circumstances during pre-trial detention that implicate Fourth Amendment rights; however, we refer to the Fourth Amendment as applying to those actions which occur between arrest and pre-trial detention." United States v. Johnstone, 107 F.3d 200, 206-207 (3d Cir. 1997).  A Plaintiff contesting the deprivation of liberty prong "must show that he suffered a seizure as a consequence of a legal proceeding." Gallo, 161 F.3d at 222.

Defendants argue that that there is no evidence in the record that Plaintiff was ever incarcerated, or otherwise suffered any deprivation of his liberty as a result of the investigation and Plaintiff's subsequent indictment. (Def. Kohler Reply Br. at 2.)

In Curry v. Yachera, 835 F.3d 373, 380 (3d Cir. 2016), the court held that the plaintiff could not succeed on the deprivation of liberty prong because he was already in jail for a different crime when the detective brought his charges that were eventually dropped. Here, like in Curry, Plaintiff was already in jail for the illegal weapons found during a search of his home on August 24, 2007, and therefore Plaintiff suffered no pre-trial detention as a result of the narcotics investigation. Plaintiff has failed to satisfy the fifth prong in a malicious prosecution action and show that he suffered a deprivation of liberty due to his prosecution. For the reasons stated herein the Court will grant summary judgment in favor of Defendants Kohler, Fine, and Caruso.

### C. Qualified Immunity

Defendant Fine, Defendant Caruso and Defendant Kohler alternatively move for summary judgment on qualified immunity grounds. Given that the Court grants summary judgment to all three defendants on Plaintiff's remaining malicious prosecution

claim, the Court need not address Defendants' qualified immunity arguments.

**V.    CONCLUSION**

An accompanying Order will be entered.

**August 31, 2017**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge